**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JAMIE DUNAWAY and
BRIAN DUNAWAY,

Plaintiffs,

v. Case No. 8:26-cv-1767-KKM-SPF

CHUBB INSURANCE COMPANY OF
NEW JERSEY, *a foreign corporation*,

Defendant.

---

**ORDER**

Defendant Chubb Insurance Company of New Jersey moves to dismiss this insurance-coverage declaratory-judgment action on grounds that Florida's nonjoinder statute precludes it. *See* Mot. (Doc. 10) at 2 (citing § 627.4136, Fla. Stat.). Plaintiffs Jamie and Brian Dunaway oppose. *See* Resp. (Doc. 11). Although this action is ripe because the Dunaways established their alleged tortfeasor's liability in state court, Florida's nonjoinder statute bars the Dunaways' claim because they have not yet "obtain[ed] a settlement or verdict" against him. *See* § 627.4136(1), Fla. Stat. I dismiss the Dunaways' claim without prejudice.

## I. BACKGROUND

Jamie Dunaway was involved in an automobile collision with Ryan Fredrickson. *See* Compl. (Doc. 1-1) ¶¶ 18–19. When the collision occurred, Fredrickson was driving a car that he received from his grandparents, Harry and Jane Hinkleman. *Id.* ¶¶ 6, 9–13, 18. Harry Hinkleman still had an active insurance policy from Chubb on the car. *Id.* ¶ 14–15.

Jamie Dunaway and her husband, Brian Dunaway, sued both Fredrickson and the Hinklemans in state court for negligence and just the Hinklemans for vicarious liability, negligent access, negligent entrustment, and negligent sale. *See* Underlying Compl. (Doc. 1-5) ¶¶ 4–61. Although this underlying suit is still unresolved, *see* Underlying Suit Docket (Doc. 10-1), the state court entered default against Fredrickson because he did not respond to the complaint, *see* Order Entering Default (Doc. 9-1); Compl. ¶ 22.

After Fredrickson's default in the underlying suit, the Dunaways sued Chubb in state court seeking a declaratory judgment that Harry Hinkleman's insurance policy with Chubb covers Fredrickson. *See* Compl. Chubb removed this action to federal court. *See* Notice of Removal (Doc. 1).

## II. LEGAL STANDARD

### A. Subject-Matter Jurisdiction

Article III limits the jurisdiction of federal courts to "Cases" and "Controversies," *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021),

thereby "confin[ing] the federal courts to a properly judicial role." *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016). As such, federal courts must independently assure themselves that they have jurisdiction over a case at every stage, regardless of whether the parties raise the issue or agree that jurisdiction exists. *See Plains Com. Bank v. Long Fam. Land & Cattle, Inc.*, 554 U.S. 316, 324 (2008); *United States v. Ross*, 963 F.3d 1056, 1062 (11th Cir. 2020) (en banc). "Federal courts have an obligation to examine sua sponte their own jurisdiction over a case, notwithstanding the contentions of the parties," because "subject-matter jurisdiction underlies a court's power to hear a case." *DeRoy v. Carnival Corp.*, 963 F.3d 1302, 1311 (11th Cir. 2020); *see also Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (same for ripeness).

A defendant may remove a civil action filed in state court to federal court when the federal court would have had original jurisdiction over the action. 28 U.S.C. § 1441(a). In removal cases, "the burden is on the party who sought removal to demonstrate that federal jurisdiction exists." *Kirland v. Midland Mortg. Co.*, 243 F.3d 1277, 1281 n.5 (11th Cir. 2001). A district court has jurisdiction if the parties are completely diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). Parties are "complete[ly] divers[e]" when the plaintiff is not domiciled within the same state as any defendant. *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1564 (11th Cir. 1994).

And, in assessing the amount-in-controversy requirement in a removed case, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (citing 28 U.S.C. § 1446(a)). "Evidence establishing the amount is required [] only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* (citing 28 U.S.C. § 1446(c)(2)(B)).

**B. Rule 12(b)(6) of the Federal Rules of Civil Procedure**

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering the motion, the complaint's factual allegations are accepted "as true" and construed "in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Consideration is limited "to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), *abrogated on other grounds*, *Twombly*, 550 U.S. 544.

## III. ANALYSIS

### A. Subject-Matter Jurisdiction Exists Over the Action

After Chubb removed the Dunaways' action from state court by invoking this Court's diversity jurisdiction, *see* Notice of Removal at 1, I directed it to show cause why I should not dismiss the Dunaways' claim for lack of jurisdiction based on the direct-action proviso, 28 U.S.C. § 1332(c)(1), and ripeness doctrine. *See* Order to Show Cause (Doc. 8). After considering Chubb's response, Resp. to Order to Show Cause (Doc. 9), I conclude that this Court has subject-matter jurisdiction over the Dunaways' claim because the direct-action proviso does not apply to this declaratory-judgment action and Fredrickson's default in the underlying suit renders this case ripe.

#### i. Diversity Jurisdiction Is Proper

Chubb invoked this Court's diversity jurisdiction when removing the Dunaways' declaratory-judgment action. Notice of Removal ¶¶ 3–6. Because Chubb plausibly alleges in its notice of removal that the parties are diverse and the amount in controversy is over $75,000, I agree that this Court has diversity jurisdiction over the Dunaways' claim.

First, the Dunaways and Chubb are completely diverse. *See Palmer*, 22 F.3d at 1564. The Dunaways reside in Pasco County, Florida, Compl. ¶ 3, so they are presumptive citizens of Florida, *see Jones v. L. Firm of Hill & Ponton*, 141 F. Supp. 2d 1349, 1355 (M.D. Fla. 2001) ("One [] presumption is that the

state in which a person resides at any given time is also that person's domicile."). And "Chubb [ ] is a New Jersey corporation with its principal place of business in New Jersey, so it is a citizen of New Jersey." *ECB USA, Inc. v. Chubb Ins. Co. of N.J.*, 113 F.4th 1312, 1320 (11th Cir. 2024); Notice of Removal ¶ 5.

Section 1332(c)'s proviso deeming an insurer to be a citizen of "every State . . . of which the insured is a citizen" does not change this conclusion because it applies only to "direct action[s]." *See* 28 U.S.C. § 1332(c)(1). An "action is not a direct action" "unless the cause of action against the insurance company is of such a nature that the liability sought to be imposed could be imposed against the insured." *City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1315 (11th Cir. 2012) (quoting *Fortson v. St. Paul Fire & Marine Ins. Co.*, 751 F.2d 1157, 1159 (11th Cir. 1985)). "[T]he key feature of a direct action under [Section] 1332(c) is, and always has been, the plaintiff's ability to skip suing the tortfeasor and sue directly his insurance carrier." *Kong v. Allied Pro. Ins. Co.*, 750 F.3d 1295, 1300 (11th Cir. 2014) (citation modified). Section 1332(c) "defeat[s] diversity jurisdiction only if the claim which the third party has against the insured—for intentional tort, negligence, fraud, etc.—is the same one asserted against the insurance company as within the zone of primary liability for which the company issued the policy." *John Cooper Produce, Inc. v. Paxton Nat'l Ins. Co.*, 774 F.2d 433, 435 (11th Cir. 1985).

Here, the Dunaways did not skip suing their alleged tortfeasors to sue Chubb directly and they do not sue Chubb for the alleged torts. They sued Fredrickson and the Hinklemans for negligence, presumptively established Fredrickson's liability by obtaining an entry of default against him, and brought this separate action for a declaratory judgment that Fredrickson was insured under the Hinklemans' policy with Chubb. *See generally* Compl. They could not have sued the Hinklemans or Fredrickson directly for the requested declaratory relief. *See* § 86.091, Fla. Stat. ("No declaration shall prejudice the rights of persons not parties to the proceedings."); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (explaining that the parties must "hav[e] adverse legal interests" to satisfy Article III's case-or-controversy requirement). Because this declaratory-judgment action is not a direct action, Section 1332(c) does not render Chubb a citizen of Florida in this suit. Thus, the parties are completely diverse.

Second, the amount in controversy is over $75,000. Although the Dunaways' complaint alleges that the amount in controversy is at least $50,000 (the jurisdictional requirement for Florida circuit-court actions), Compl. ¶ 1; *see* §§ 26.012(2)(a), 34.01(1)(c)(3), Fla. Stat., Chubb's notice of removal alleges that the amount in controversy exceeds $75,000, Notice of Removal ¶¶ 7–13. Chubb supports its allegation with the Dunaways' demand letter for $500,000, "enclos[ing] [Jamie] Dunaway's medical records, which

reveal[] that she underwent surgery with insertion of hardware for her fractured pelvis, was hospitalized for several days after the accident, and was subsequently admitted to impatient rehab for several weeks," *id.* ¶ 10 (citing (Doc. 1-6)), and the Dunaways' proposal to settle for $479,999, *id.* ¶ 12 (citing (Doc 1-7)). Chubb adds that the subject insurance policy covers up to $500,000 per accident, *id.* ¶ 9, and that the only defendant remaining in the underlying suit is the alleged insured in this declaratory-judgment action, Fredrickson, *id.* ¶ 11. Accordingly, Chubb plausibly alleges that the amount in controversy is over $75,000. *See Dart Cherokee*, 574 U.S. at 89. The Dunaways do not contest, and I do not question, this allegation.

**ii. The Declaratory-Judgment Claim Is Ripe**

Before considering the merits of the Dunaways' declaratory-judgment claim, I must ensure that it embodies a case or controversy that is ripe for adjudication. Specifically, I must decide if the Dunaways' request for a declaratory judgment as to whether Chubb's insurance policy covers their alleged tortfeasor is ripe when, in the underlying action, the state court entered an order of default against the alleged tortfeasor but has not entered a final judgment or rendered a verdict. Because the Dunaways presumptively determined their alleged tortfeasor's liability in the underlying suit through a default and controlling Eleventh Circuit precedent holds that an injured third

party may sue an insurer even without a final judgment in her favor, this case is ripe.

Under Article III, a "claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.' " *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Ag. Prods. Co.*, 473 U.S. 568, 580–81 (1985)). For a claim to be ripe and a plaintiff to have standing, a "controversy must be more than 'conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury,' " and " 'the plaintiff must allege facts from which it appears that there is a substantial likelihood that he will suffer injury in the future.' " *Sheriff of Broward Cnty. v. Evanston Ins. Co.*, 159 F.4th 792, 804 (11th Cir. 2025) (quoting *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210–11 (11th Cir. 2019)); *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014) (explaining that "standing and ripeness originate from the same Article III limitation" and often "boil down to the same question") (citation modified).

Consistent with Article III, "the federal Declaratory Judgment Act empowers a district court to enter a judgment 'declar[ing] the rights and other legal relations of any interested party' *only in 'a case of actual controversy within its jurisdiction,'* regardless of whether 'further relief is or could be sought.' " *Sheriff*, 159 F.4th at 803 (quoting 28 U.S.C. § 2201(a)). The

Declaratory Judgment Act's "'actual controversy' requirement '[e]cho[es]' Article III's standing requirement." *Id.* (quoting *A&M Gerber Chiropractic*, 925 F.3d at 1210). Although "[t]he difference between an abstract question and a 'controversy' . . . is necessarily one of degree," *id.* (quoting *GTE Directories Publ'g Corp. v. Trinem Am., Inc.*, 67 F.3d 1563, 1567 (11th Cir. 1995), "[t]he basic question 'is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment,'" *id.* (quoting *GTE Directories Publ'g*, 67 F.3d at 1567)); *accord Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

The Supreme Court has explained that a ripe case or controversy can exist between an insurer and a third party even in the absence of a judgment for the third party in the underlying suit. *Md. Cas. Co.*, 312 U.S. at 273–74. In *Maryland Casualty*, the insurer sued the insured and the insured's third-party victim for a determination that the policy did not require the insurer to indemnify the insured. *Id.* at 271. Without a final judgment or settlement resolving the underlying tort claims, the district court and court of appeals held that the plaintiff was not entitled to declaratory relief because there was no actual controversy under the Declaratory Judgment Act. *Id.* at 272. The Supreme Court reversed, explaining that the dispute "plain[ly]" presented a controversy. *Id.* at 273.

The Eleventh Circuit has extended *Maryland Casualty* to a declaratory-judgment action brought by a third party against her tortfeasor's insurers. *Edwards v. Sharkey*, 747 F.2d 684, 686–87 (11th Cir. 1984) ("[T]he Supreme Court of the United States has held that a 'case or controversy' exists to support declaratory relief between an injured third party and an insurance company even in the absence of a judgment in favor of the injured third party against the insured." (citing *Md. Cas. Co.*, 312 U.S. 270)). In *Edwards*, the plaintiffs were injured third parties who sued their tortfeasor and the tortfeasor's two insurers for a determination of each insurer's relative liabilities. *Id.* at 685. After the district court granted summary judgment for one of the insurers, the plaintiffs and other insurer appealed. *Id.* The underlying tort suits were still pending in state court at the time of the appeals, but the parties settled before the appeals were decided. *Id.* at 686. The Eleventh Circuit held that the declaratory-judgment action presented a "case or controversy" under *Maryland Casualty*, but, even if it did not, that the settlement "provide[d] the necessary establishment of the insured's liability" to ripen the action on appeal. *Id.* at 686–87. Recently, the Eleventh Circuit cited *Edwards* for the proposition that "the district court had jurisdiction to rule on an insurance coverage dispute related to litigation arising from a car collision even in the absence of a final judgment in the underlying tort litigation." *Sheriff*, 159 F.4th at 804 (holding that "there is no fixed requirement that an insured [ ] must incur a judgment

or settlement before he can bring a declaratory judgment action over an insurer's denial of insurance coverage").[1]

At the same time, the Eleventh Circuit has explained in recent unpublished opinions that "an insurer's duty to indemnify is not ripe until the underlying lawsuit is resolved or the insured's liability is established," *Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 770 (11th Cir. 2019), because, "until there is an adverse judgment against the insured, 'the liabilities are contingent and may never materialize,'" *Sullivan v. Everett Cash Mut. Ins. Co.*, No. 19-11943, 2023 WL 1521579, at *4 (11th Cir. Feb. 3, 2023) (quoting *Allstate Ins. Co. v. Emps. Liab. Assur. Co.*, 445 F.2d 1278, 1281 (5th Cir. 1971)). Although I agree with this proposition and find it more persuasive on first principles, it is hard to square with *Edwards* and *Sheriff*, both of which are precedential and hold that a final judgment is not a precondition to ripeness. *See Edwards*, 747 F.2d at 686–87; *Sheriff*, 159 F.4th at 804.[2]

---

[1] In an unpublished opinion, the Eleventh Circuit cited *Edwards* for the "ruling that a declaratory judgment claim for insurance coverage had ripened when the parties to the underlying tort suit settled, even though the settlement took place after the district court rendered its decision." *Progressive Mt. Ins. Co. v. Middlebrooks*, 805 F. App'x 731, 735 (11th Cir. 2020) (per curiam) (citing *Edwards*, 747 F.2d at 735).

[2] The former Fifth Circuit cases on which these opinions rely—*American Fidelity* and *Allstate*—are little help because those cases are not about Article III ripeness. *See Edwards*, 747 F.2d at 686 (citing *Am. Fid. & Cas. Co. v. Pa. Threshermen & Farmers' Mut. Cas. Ins. Co.*, 280 F.2d 453, 461 (5th Cir. 1960)); *Delacruz*, 766 F. App'x at 771. Instead, they are about a district court's discretion under the Declaratory Judgment

Absent *Edwards*, the Dunaways' claim would likely be unripe because it is contingent on the outcome of the proceedings in the underlying tort suit. Because the state court has not entered a final judgment against the alleged tortfeasor or otherwise determined damages, there still may be no damages to indemnify.

Although the state court entered an order of default against the alleged tortfeasor, whether he is ultimately liable and must pay damages remains speculative. In Florida, an order of default is a procedural bar that "precludes a party from contesting the existence of the plaintiff's claim and liability thereon," after which "a party has the right to contest damages caused by the party's wrong but no other issue." *Fla. Bar v. Porter*, 684 So. 2d 810, 813 n.4 (Fla. 1996) (citations omitted); *see Coggin v. Barfield*, 8 So. 2d 9, 11 (Fla. 1942) ("The true purpose of the entry of a default is to speed the cause thereby preventing a dilatory or procrastinating defendant from impeding the plaintiff in the establishment of his claim."). Although the Supreme Court of Florida has described an order of default as "conclusively" and "authoritatively" determining liability, *see Doctor's Hosp. of Hollywood, Inc. v. Madison*, 411 So. 2d 190, 192 (Fla. 1982), an order of default "does not admit facts not pleaded,

---

Act to decline to adjudicate requests for declaratory relief that are contingent on future events. *See Am. Fid. & Cas. Co.*, 280 F.2d at 461; *Allstate Ins. Co.*, 445 F.2d at 1281.

not properly pleaded[,] or conclusions of law," TRAWICK'S FLA. PRAC. & PROC. § 26:4; *accord Bredin v. Bredin*, 89 So. 2d 353, 355 (Fla. 1956) ("A decree pro confesso admits the factual allegations of the complaint but it does not endow a trial court with power to enter a decree which neither the pleadings nor the law applicable authorize him to enter."). In an ordinary case with a defaulting defendant, an order of default occurs before the court determines whether the admitted allegations are well pleaded and legally sufficient to support a final judgment. *See Century-National Ins. Co. v. Frantz*, 369 So. 3d 739, 743–44 (Fla. 2d DCA 2023). More, an order of default is nonfinal and can be set aside for "excusable neglect, a meritorious defense, and due diligence in moving to set aside the default." *See Universal Prop. & Cas. Ins. Co. v. Dimanche*, 338 So. 3d 408, 413–14 (Fla. 3d DCA 2022) (quoting *Lanza v. Allied Trucking of Fla., Inc.*, 930 So. 2d 633, 634 (Fla. 3d DCA 2006)). In fact, " 'courts are reasonably liberal in granting motions to set aside defaults.' " *N. Shore Hosp., Inc. v. Barber*, 143 So. 2d 849, 852–53 (Fla. 1962) (quoting CRANDALL, FLA. COMMON L. PRAC. § 54). So, I have reservations that an order of default, absent a final judgment, can itself ripen a declaratory-judgment action.

*Edwards* nevertheless controls. Like the plaintiffs in *Edwards*, the Dunaways are nonparties to the insurance policy and bring a declaratory-judgment action against their tortfeasor's insurer before final judgment in the underlying tort suit. *See generally* Compl. If anything, the Dunaways' claim is

on stronger footing than the *Edwards* plaintiffs' claim because the Dunaways have presumptively established their tortfeasor's liability by obtaining an order of default against him in the underlying suit. *See Delacruz*, 766 F. App'x at 770 ("[A]n insurer's duty to indemnify is not ripe until the underlying lawsuit is resolved or the insured's liability is established[.]"). The *Edwards* opinion does not suggest that the plaintiffs had established their tortfeasor's liability in any way when the district court issued a declaratory judgment. *See* 747 F.2d at 685. Therefore, the Dunaways' claim is ripe.

**B. Florida's Nonjoinder Statute Bars the Dunaways' Claim**

Chubb argues that Florida's nonjoinder statute, Section 627.4136, bars the Dunaways' declaratory-judgment claim because, even though Fredrickson defaulted, the Dunaways have not obtained a settlement with or verdict against him. *See* Mot. at 2–5. I agree.

Under Florida's nonjoinder statute, an injured party may not "maintai[n] any cause of action against" his tortfeasor's liability insurer "until [he] satisfies the compulsory condition precedent of obtaining a settlement or verdict against" the tortfeasor. *GEICO Gen. Ins. Co. v. Martinez*, 240 So. 3d 43, 46 (Fla. 3d DCA 2018). "[I]ndeed, [the nonjoinder statute] precludes even the accrual of such cause of action" until the condition precedent is satisfied. *Id.* The nonjoinder statute applies to declaratory-judgment actions. *See, e.g.*, *S. Owners Ins. Co. v. Mathieu*, 67 So. 3d 1156, 1159 (Fla. 2d DCA 2011).

Here, the Dunaways have not satisfied that condition precedent because an entry of default is not a "settlement" or "verdict." *See* § 627.4136, Fla. Stat. An entry of default presumptively establishes liability but, unlike a verdict or a final default judgment, does not determine unliquidated damages. *Century-National Ins. Co. v. Frantz*, 369 So. 3d 739, 743 (Fla. 2d DCA 2023); *see Morales v. Zenith Ins. Co.*, 152 So. 3d 557, 560 (Fla. 2014) (concluding that a default judgment can satisfy the nonjoinder statute's condition precedent). This distinction matters because "[t]he purpose of the nonjoinder statute is . . . 'to ensure that the availability of insurance has no influence on the jury's determination of . . . damages.' " *Geico Gen. Ins. Co. v. Lepine*, 173 So. 3d 1142, 1144 (Fla. 2d DCA 2015) (citation omitted).

Here, although the state court's order entering default against Fredrickson is titled "Order Granting [the Dunaways'] Motion for Default Judgment," it orders only that Fredrickson "is hereby defaulted" in the underlying action. *See* Order Entering Default. And the state court has not yet rendered a verdict or entered final judgment against Fredrickson. *See* Underlying Suit Docket. With no verdict or final judgment against Fredrickson, Florida's nonjoinder statute bars the Dunaways' claim.

The Dunaways' argument that they have a beneficial interest in the insurance policy does not change this result. *See* Resp. at 1. Section 627.4136 expressly provides that a noninsured has no interest in an insurance policy,

"either as a third-party beneficiary or otherwise," before obtaining the required "settlement or verdict." § 627.4136(2), Fla. Stat. Put another way, "[t]he statute transfers the accrual of a beneficial interest from the date of occurrence until the time an action brought on a tort has matured to judgment." *VanBibber v. Hartford Acc. & Indem. Ins. Co.*, 439 So. 880, 882 (Fla. 1983). The Dunaways' reliance on *Mathieu* is therefore misplaced. *See* Resp. at 1. As with the Dunaways, the injured third parties in *Mathieu* "ha[d] not obtained a settlement with or verdict against [their tortfeasor]," so they "did not yet have a beneficial interest in [their tortfeasor's] liability policy." 67 So. 3d at 1158 (citations omitted).

Because Florida's nonjoinder statute precludes the Dunaways' premature declaratory-judgment claim against Chubb, this action is dismissed. *See id.* at 1159 ("We [ ] hold that where an injured third-party brings a declaratory judgment action against an insurer prior to obtaining a settlement with or verdict against the insured, the action must be dismissed." (citations omitted)).

## IV. CONCLUSION

Although the Dunaways' declaratory-judgment action is ripe because it established Fredrickson's liability in state court, it is barred by Florida's nonjoinder statute because the Dunaways have not obtained a settlement with or verdict against him. Accordingly, the following is **ORDERED**:

1. The Court's Order to Show Cause, (Doc. 7), is **DISCHARGED**.

2. Chubb's Motion to Dismiss the Dunaways' Complaint, (Doc. 8), is **GRANTED**.

3. The Dunaways' Complaint, (Doc. 1-1), is **DISMISSED without prejudice**.

4. The Clerk is directed to enter **JUDGMENT** against the Dunaways in accordance with this order.

5. The Clerk is further directed to terminate any pending motions and deadlines and **CLOSE** this case.

**ORDERED** in Tampa, Florida, on September 1, 2026.

Kathryn Kimball Mizelle

Kathryn Kimball Mizelle
United States District Judge